```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                      13 Cr. 307 (PAC)

GARVIN PETERS,
                                    Sentence
            Defendant.

------------------------------x

                                    New York, N.Y.
                                    October 28, 2013
                                    4:30 p.m.

Before:

        HON. PAUL A. CROTTY

                                    District Judge


        APPEARANCES


PREET BHARARA
    United States Attorney for the
    Southern District of New York
ANDREW C. ADAMS
MARGARET KRAM
    Assistant United States Attorney


DAMIEN M. BROWN
    Attorney for Defendant
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1           (Case called)
2           THE CLERK:  Counsel, for the government, please state
3    your appearances.
4           MR. ADAMS:  Andrew Adams and Margaret Kram for the
5    government.
6           THE COURT:  Good afternoon.  Please be seated.
7           THE CLERK:  For the defendant?
8           MR. BROWN:  Damien Brown, 26 Court Street, Suite 8,
9    Brooklyn, New York, 11242, on behalf of Garvin Peters.  Good
10   afternoon, your Honor.
11          THE COURT:  Good afternoon, Mr. Brown, Mr. Peters.
12   Please be seated.  Has everybody seen the pre-sentence report
13   dated October 1, 2013?
14          THE DEFENDANT:  Yes, your Honor.
15          THE COURT:  Any factual corrections you want to make?
16          MR. ADAMS:  None from the government.
17          MR. BROWN:  None from the defense.
18          THE COURT:  I am going to accept the facts as set
19   forth in the pre-sentence report of October 1, 2013, as
20   accurate.
21          The PSR calculates the guidelines at an offense level
22   of 10 and a criminal history category of I, resulting in a
23   guideline calculation of 6 to 12 months.  Do you accept that as
24   correct, Mr. Adams?
25          MR. ADAMS:  Yes, your Honor, that is the government's

1   calculation.

2           THE COURT:  Mr. Brown?

3           MR. BROWN:  Yes, your Honor.

4           THE COURT:  I am going to accept the guideline
5   calculation that is set forth in the PSR as accurate.

6           Mr. Brown, I should tell you that I have read your
7   letter and the attachments to it testifying to Mr. Peters' good
8   character.  Do you want to elaborate on it?

9           MR. BROWN:  Your Honor, as you said, you have already
10  read it.  I won't go through it ad nauseam.  As you can see, I
11  did attach a number of letters from my client's community.
12  When I say community, I mean not just here in New York but
13  throughout his family and friends and in-laws as well, one of
14  whom is here today in the back, as well as his wife.

15          Judge, as you have already been able to glean both
16  from the probation sentencing report as well as the one
17  submitted from my office on behalf of Mr. Peters, Mr. Peters
18  stands before you with no criminal contact prior to this.  He
19  came over here from Trinidad, coming to find work.  He was
20  finally able to do so.  All of his family was back in Trinidad,
21  particularly referring to his children, and his wife at the
22  time.  Eventually, while that relationship dissolved, his
23  relationship with his children carried on even to this day.

24          Unfortunately, and you know, my client has pled guilty
25  to falsifying information, providing false information on a

1  renewal application for his passport.  He has fully admitted to
2  doing so.  His reasons for doing so do not excuse the crime,
3  Judge, but I think it sheds some light on who Mr. Peters is.
4  That is simply that he wanted a way to keep in physical contact
5  with his family back home and yet still be able to work here
6  and be for the most part to maintain financial support of his
7  family back home for a very long period of time.
8          You are also aware that he is not being charged with
9  trying to profit from this false passport, credits and things
10 of that nature.  This was simply a means to get back and forth
11 so that he can continue to work but still stay in contact with
12 his family.
13         The person whose information was used is the deceased
14 husband of my client's current wife.  They have been in a
15 relationship for quite some time after her husband passed.
16 They met sometime after that.  They are now married, legally
17 married.  I only bring that up to point out that no harm was
18 caused to another individual who, let's say, if the individual
19 was alive may have had difficulties due to this.  Again, I
20 don't want to minimize what was done, but just letting you know
21 a little bit more about my client.  He is older now, has some
22 physical ailments.
23         THE COURT:  You are referring to his two strokes?
24         MR. BROWN:  Yes, your Honor.  He still works.  He is
25 still doing everything that he can.  In fact, I have even been

1  to his house to see some of the things that he has been working
2  on over the years in terms of carpentry.  So he does what he
3  can and he is still employed.
4           His memory is not as sharp as it was, as evidenced by
5  the fact that his wife during the probation interview had to
6  assist with certain details of family or addresses and things
7  of that nature.  But when he took the plea, he had all his
8  mental faculties and still as he stands here ready for sentence
9  today, he does as well.
10          In a nutshell, Judge, beyond just what the probation
11 department as well as my office is able to tell you, I think
12 the letters speak volumes about his character and who he is and
13 who he has been his entire life.
14          This is one of the things that he did want me to say
15 on his behalf.  He is a very shy, very nervous person.  He does
16 regret breaking the law.  Regardless of the reasons for it, he
17 regrets it.  Pretty much in his life it's the one stain on not
18 just his record but who he is as a person.  It has affected him
19 as well as his family.
20          I don't mean relationships have broken up.  I know his
21 family, particularly his in-laws, on a personal level.  I could
22 see the amounts of love and respect that they show for this
23 man.  Obviously, I just met him through this case, but I can
24 tell you that it is rare, and I have been doing this 17 years,
25 it is rare that you get so much outpouring and have somebody

1  who has lived a long life and in such a decent way.

2  I would ask you to consider all of that, your Honor.

3  THE COURT:  Thank you very much, Mr. Brown.

4  Mr. Adams.

5  MR. ADAMS:  Your Honor, I have very little to add
6  apart from saying that the government has no information that
7  would contradict any of what is in the PSR or in anything that
8  Mr. Peters has submitted, specifically, including the
9  representations regarding his lack of any financial incentive.

10  THE COURT:  I am most interested in your reaction to
11  page 16, at the top, of the PSR.  Do you have any specific
12  disagreements with that?  This is the PSR of October 1st, the
13  sentence that begins, "Regarding a sentencing recommendation,"
14  and so forth.  Do you have any specific agreements with that?

15  MR. ADAMS:  No, your Honor.  In particular, the very
16  first sentence, "He needed a passport for the sole purpose of
17  visiting family as opposed to some financial incentive."  The
18  guidelines are in this case focused in particular on financial
19  incentives and relationships with suspect groups.  The
20  government has no contention that either of those is at play in
21  this case.

22  THE COURT:  Thank you very much, Mr. Adams.

23  Mr. Peters, this is your opportunity if you want to
24  speak.  Do you want to speak?  Do you want to say anything?

25  THE DEFENDANT:  Just I'm sorry for what I did.

1           THE COURT:  Anything else?

2           THE DEFENDANT:  No.

3           THE COURT:  I have gone back and read the Pimentel
4   letter and the plea colloquy and I have read Mr. Brown's
5   excellent submission.  I appreciate the input of the U.S.
6   Attorney's office.  As always, it is very helpful.

7           At page 16 in the PSR it is rare that you get a
8   recommendation like this from the Department of Probation.  It
9   reads as follows.  "Regarding a sentencing recommendation,
10  Peters appears to have needed a passport for the sole purpose
11  of visiting his family.  He could have easily avoided trouble
12  by traveling under his green card, his Trinidad passport, or,
13  in his 23 years of living in the United States, by naturalizing
14  and obtaining a U.S. passport.

15          "However foolish Peters' conduct was, it does not
16  diminish the fact that this is a felony conviction for passport
17  fraud and a serious offense.  We are hopeful that this conduct
18  will be Peters' first and last encounter with the law.  Based
19  on his age, extensive employment, background, lack of
20  involvement with drugs and alcohol, and lack of criminal
21  history, recidivism is a minor concern.

22          "That said, the nature and the circumstances of the
23  offense, as well as the characteristics of the defendant, are
24  compelling enough for us to endorse a downward variance per 18
25  U.S.C. section 3553(a)."

1     I am going to follow the recommendation contained in
2  the PSR and sentence Mr. Peters to time served.  I am also
3  going to put him on supervised release for one year.
4  Supervised release is subject to the mandatory conditions,
5  except I'm going to suspend the drug testing condition.  It is
6  also subject to the standard conditions of supervision 1
7  through 13, with the following special conditions.
8     Mr. Peters has to obey the immigration laws and comply
9  with directives of the immigration authorities.  He is to
10 report to the nearest probation office within 72 hours of this
11 sentencing proceeding.  And he is to be supervised in the
12 district of his residence.
13    That is the sentence I intend to impose.  Mr. Brown,
14 do you have any objection?
15    MR. BROWN:  No, your Honor.
16    THE COURT:  The sentence is imposed.
17    Mr. Peters, I have to advise you now that I have
18 sentenced you, I don't think you will want to do any of this,
19 but I have to advise you, you have the right under the rules of
20 criminal procedure to appeal the sentence that I have just
21 imposed upon you.  If you can't afford to pay the appeal costs,
22 you have the right to ask for permission to appeal in forma
23 pauperis.
24    If you so request, my clerk will immediately prepare
25 and file a notice of appeal on your behalf.  The notice of

1 appeal has to be filed within 14 days of the entry of judgment.
2 Judgment will be entered by noontime tomorrow.  Mr. Brown can
3 give you further advice on what your appeal rights are.
4             Are there open counts, Mr. Adams?
5             MR. ADAMS:  There are none, your Honor.
6             THE COURT:  Anything else to do then?
7             MR. ADAMS:  I apologize if I missed it, but there is a
8 mandatory special assessment in this case.
9             THE COURT:  Yes.  Thank you very much.
10             Mr. Brown, I neglected to say this, and I appreciate
11 Mr. Adams calling it to my attention.  There is a $100 special
12 assessment that I must impose by statute, so I impose that as
13 well.  The sentence is that I dictated before is accurate with
14 the amendment that I am imposing a $100 special assessment.
15 You can appeal that as well, but it is a statutorily mandated
16 assessment.  As I say, Mr. Brown can advise you on your rights
17 to appeal.
18             Anything else?
19             MR. ADAMS:  Nothing from the government.
20             THE COURT:  Thank you very much, Mr. Adams.  I
21 appreciate it.
22             MR. BROWN:  Thank you, your Honor.
23             THE COURT:  Mr. Peters, I wish you good luck.
24             THE DEFENDANT:  Thank you, your Honor.
25             (Adjourned)